1

2

3

4                        UNITED STATES DISTRICT COURT

5                        EASTERN DISTRICT OF CALIFORNIA

6

7  CHIERFUE HER and GE XIONG,              CASE NO. 1:13-CV-1095 AWI GSA

8                        Plaintiffs

9              v.                          ORDER ON DEFENDANT'S MOTION
                                          FOR SUMMARY JUDGMENT
10 STATE FARM INSURANCE COMPANY,
   and DOES 1-20,                         (Doc. No. 9)
11
                        Defendants
12

13

14        This is an insurance dispute between Plaintiffs Chierfue Her ("Her") and Ge Xiong

15 ("Xiong") and their former insurer, State Farm Insurance Company ("State Farm").  Plaintiffs

16 have alleged state law claims for breach of contract and bad faith.  State Farm now moves for

17 summary judgment on all claims alleged against it.  For the reasons that follow, the motion will be

18 granted in part and denied in part.

19

20                        **BACKGROUND**[1]

21        In October 2011, Plaintiffs had a State Farm Renter's Insurance Policy ("the Policy").  See

22 DUMF 1.  The Policy had limits of $50,000 for personal property, $1,000 for cash, and $5,000 for

23 jewelry.  See Defendant's Ex. 1; Xiong Dec. ¶ 8.  The Policy contained a section entitled "Your

24 Duties After Loss."  See DUMF 34.  In pertinent part, that section provides:

25        After a loss to which this insurance may apply, you shall see that the following
          duties are performed:
26        . . .
          (c)  prepare an inventory of damaged or stolen property.  Show in detail the

27

28 ───────────────
[1] "DUMF" refers to "Defendant's Undisputed Material Fact," and "PUMF" refers to "Plaintiff's Undisputed Material
Fact."

quantity, description, age, replacement cost and amount of loss.  Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;
. . .
(e)  submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, the best of your knowledge and belief:
. . .

        (6) an inventory of damaged or stolen personal property described in 2.c.

DUMF 34.

Additionally, under a section entitled "Conditions," the Policy contained a provision entitled "Concealment and Fraud."  <u>See</u> DUMF 1.  The "Concealment and Fraud" section reads: "This policy is void as to you and any other insured if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstances relating to this insurance, whether before or after the loss."  <u>Id.</u>

On October 7, 2011, Xiong left her home around 11:00 a.m. and returned around 1:45 p.m., and discovered that a door had been forced and her bedroom ransacked.  <u>See</u> Defendant's Ex. 2; Xiong Dec. ¶ 3.  Plaintiffs contacted the Clovis Police Department and reported a burglary of their residence.  <u>See</u> DUMF 2.  Officer Griffith of the Clovis Police Department responded to the call.  <u>See</u> Defendant's Ex. 2.  Officer Griffith prepared a Crime Report that indicates:  the burglars targeted the master bedroom and ignored all other rooms; the burglars rifled through the dresser drawers and a filing cabinet but no items were taken; the burglars broke into a dead-bolted closet were they took large amounts of cash, jewelry, and a handgun; the burglars likely targeted the house and master bedroom because they were familiar with the house; and it did not appear that the burglars spent any time searching other locations inside the house.  <u>See id.</u>; DUMF 2.  The Crime Report indicates that the following items were stolen or damaged:  (1) three doors; (2) $7,000 in cash; (3) one handgun; (4) seven silver bars; (5) four gold necklaces; and (6) seven gold bracelets.  <u>See id.</u>  The police told Plaintiffs to make a detailed examination of anything else that was missing and to describe missing items in as great a detail as possible in order to aid in the return of property in case an arrest was made.  <u>See</u> Her Dec. ¶ 5; Xiong Dec. ¶ 5.

On Monday October 10, 2011, Plaintiffs contacted State Farm and made a claim under the Policy.  <u>See</u> DUMF 3.  State Farm appears to have set reserves of $4,300 for the claim.  <u>See</u> Doc. No. 15-1 at p.17.  The same day, State Farm sent Plaintiffs a confirmation letter and a Personal

Property Inventory Customer Worksheet ("the Worksheet").  See DUMF 3.  The Worksheet lists

the insured, the date of loss, and the "room" where items were damaged or lost.  See Defendant's

Ex. 7.  The Worksheet has columns for quantity, a detailed description of an item, the brand name

or model of an item, where the item was purchased, the age of the item, the current repair or

replacement cost of the item, and whether documentation for the item has been attached.  See id.

There is a warning that submitting a false claim is a crime, and a space for the insured's signature

and date.  See id.  State Farm also advised Plaintiffs that the maximum recovery for any cash

stolen was $1,000.00 and that the maximum recovery for lost coins, jewelry, or fur was $5,000.00.

See Her Dec. ¶ 8; Xiong Dec. ¶ 8.  Plaintiffs were aware of these limitations.  See id.

On October 11 and October 12, 2011, Plaintiffs provided State Farm with several lists of

stolen or damaged "personal assets."  See Defendants' Exs. 4, 5.  The October 11 list identified 41

items, including electronic equipment, clothing, jewelry, cash, silver coins and bars, and damaged

furniture.  See Defendant's Ex. 4.  The October 12 list identified four items, including a Rolex

watch, a VCR, and damaged furniture.  See Defendant's Ex. 5.  On October 13, 2011, State Farm

requested that Plaintiffs provide the age, replacement cost, brand names, receipts, and repair

estimates for the identified items.  See DUMF 37.

On October 25, 2011, Plaintiffs submitted four signed Worksheets.  See Doc. No. 8.  The

Worksheets included:  2 televisions (a 19" set valued at $429.99 and a 25" set $1,099.99)

purchased at Best Buy, 2 laptop computers purchased at Best Buy valued at $1,600.00, 1 desktop

computer purchased at Costco valued at $1,500.00, 1 laser printer purchased at Costco valued at

$350.00, 1 blue ray player purchased at Best Buy valued at $169.99, 1 3D Blue Ray purchased at

Best Buy valued at $229.98, 1 VCR purchased at Sears valued at $475.99, 1 Sony digital camera

purchased at Costco valued at $399.97, 1 Nikon digital camera purchased at Costco valued at

$1,800.00, 1 Rolex watch purchased online and valued at $25,000.00, 1 handgun valued at

$732.13, 5 men's suits valued at $2,500.00, 10 women's Hmong costumes valued at $2,000.00,

$19,500.00 in cash, 2 children's bed sets valued at $1,000.00, 1 mattress set valued at $3,000.00, 2

sofas/loveseats valued at $1,595.99, 1 corner sofa valued at $2,296.00, 2 night stands valued at

$600.00, 1 dresser with mirror valued at $1,000.00, 10 dresses valued at $1,500.00, 1 metal filing

cabinet valued at $145.00, 1,000 silver coins valued at $5,000.00, 3 silver bars valued at $1,800.00, 9 gold rings valued at $11,700.00, 3 silver necklaces for Hmong costumes valued at $3,450.00, 4 gold necklaces valued at $3,600.00, and 8 gold bracelets valued at over $20,000.00. See DUMF 8.  In comparison to the lists submitted on October 11 and October 12, the October 25 Worksheets added a Sony digital camera, reduced the estimated value of the desktop computer from $2,000.00 to $1,500.00, increased the value of the nightstands from $500.00 to $600.00, reduced the value of the 19" television set from $800 to $429.99, and reduced the value of the 25" television from $1,800 to $1,099.99.  Cf. DUMF's 4, 5 with DUMF 8.

Plaintiffs had to estimate and attempt to recall where, when, and for how much certain items were obtained.  See Her Dec. ¶ 9; Xiong Dec. ¶ 9.  Plaintiffs declare that they completed these forms to the best of their ability and estimated the costs of various items, such as cameras and televisions.  See id.  Because some of the items were purchased over six years prior, Her did not have a complete recollection of where, when, or for how much an item was obtained, or current value.  See Her Dec. ¶ 12.  Plaintiffs listed additional sums knowing that they were not recoverable because State Farm wanted a complete list of everything missing or broken.  See Her Dec. ¶ 10; Xiong Dec. ¶ 10.  Plaintiffs submitted receipts for various items claimed, and submitted photographs of Xiong wearing traditional Hmong costumes and jewelry.  See PUMF's 126-138. At least one of the receipts, for a 73" television, is for an item that appears to have never been claimed as stolen.  Cf. PUMF 131 with DUMF's 4, 5, 8 & Defendant's Ex. 2 at 55.

On November 11, 2011, State Farm requested an inspection, additional documentation to substantiate the claimed items, and furniture repair invoices.  See Doc. No. 9.

On November 16, 2011, Plaintiffs sent State Farm receipts and bank statements, including a receipt for a Nikon camera purchased for $1,479.00, a receipt for a Nikon camera purchased for $149.99, and a receipt for a Canon camcorder for $849.99.  See DUMF 10.  The Canon camcorder and the lesser valued Nikon had not been claimed as stolen or damaged before.  See DUMF's 4, 5, 8.  Also on November 16, a State Farm inspector went through Plaintiffs' residence with Plaintiffs.  See DUMF 59.  The inspector was shown where items were taken from (including two intact piggy banks in the closet that Plaintiffs indicated had been emptied from the bottom) and

1  where damaged furniture was located (except for two dresser drawers that had been discarded).

2  See id.; Defendant's Ex. 10.

3  On November 17, 2011, State Farm interviewed Peggy Lee, who worked with Plaintiffs at

4  the local State Farm agent's office.  See Doc. No. 60.  Lee said that Plaintiffs initially reported that

5  $7,000 had been taken from their youngest daughter's piggy bank.  See id.

6  On November 23, 2011, State Farm sent Plaintiffs a letter indicating that the investigation

7  was ongoing and requested additional documentation and receipts, that Her provide a recorded

8  statement, and that a Sworn Proof of Loss be submitted.  See DUMF 39; Defendant's Ex. 12.

9  On November 28, 2011, Her gave a recorded statement.  See DUMF 62.  Her stated that

10  his 17 year old and 9 year old daughters lived with him, that they moved to the rental four years

11  ago following Her's full time language teaching position being reduced to part time and a

12  foreclosure on their previous home.  See id.  Her stated that he and Xiong also earned money from

13  farming and selling crops at farmers markets.  See id.  Her stated that the burglars had broken into

14  the closet, that he stored jewelry, cameras, suits, etc. in the closet, and that after the police left

15  additional items were discovered to be missing or damaged.  See DUMF 63.

16  When asked about some of the stolen electronics, Her explained that his children had the

17  19" and 25" televisions in their rooms, and that he had purchased one television at Best Buy and

18  the other at Walmart.  See DUMF 11.  Her stated that he had paid cash for the desktop computer

19  and laser printer at Costco, and because he paid cash, Costco had no record of the purchase.  See

20  DUMF 12.  Her stated that he purchased the Rolex online and made two payments with personal

21  checks, one for $5,000 and one for $20,000.  See DUMF 70.  Her stated that he could not

22  remember when he purchased the Rolex, and that the bank would not have records going back far

23  enough.  See DUMF 73.

24  Her stated that they noticed the damage to couches after the police left.  See DUMF 69.

25  Her stated that there was $19,000 in a waist-pouch that was stolen and $500 in the piggy banks,

26  and that the burglars took the waist pouch and emptied the piggy banks.  See DUMF 71.

27  On December 6, 2011, State Farm spoke to Plaintiffs' landlord, who said that he had been

28  at the residence fixing a sprinkler the day of the burglary.  See DUMF 75.  The landlord went back

to the residence on October 7 after Plaintiffs had informed him of the burglary.  See id.  The landlord indicated that it appeared that only the bedroom closet had been broken into, and he specifically remembered seeing a television and a desktop computer in the living room.  See id.  The landlord did not hear anything about other rooms being robbed or about lost jewelry.  See id.

On December 16, 2011, State Farm sent Plaintiffs a letter requesting that they submit a Sworn Proof of Loss, their Costco purchase history, records relating to the Rolex watch, and receipts and statements to support the claims for various electronics.  See Defendant's Ex. 18.  State Farm also requested that Plaintiffs report the additional stolen items to the police and obtain a final copy of the police report.  See id.

Also on December 16, State Farm spoke to Officer Griffith, who recalled that Plaintiffs said that nothing in their kids' rooms was affected and that Plaintiffs did not mention any laptops or computers being missing.  See DUMF 76.  Officer Griffith recalled that the mattress in the master bedroom was in place, and also recalled seeing the DVD and VCR in the living room.  See id.

On January 3, 2012, Plaintiffs submitted a Visa statement with a $422.67 charge at Walmart for items that were later identified as a 32" television that cost $348 and a DVD player that cost $39.86.  See DUMF's 16, 29.  Plaintiffs also produced Costco reports that showed purchases for an $849.24 Canon camcorder, a $149.99 Nikon camera, a $1,479.99 Nikon camera, and two Sony cameras that cost $189.99 and $149.99.  See DUMF 16.

On January 16, 2012, State Farm took another recorded statement from Her.  See DUMF 80.  When asked why the landlord and Officer Griffith indicated that the only room affected was the master bedroom, Her responded that the door to the master bedroom was opened and that Plaintiffs were informed that if more was discovered missing that a list would need to be made and provided.  See id.  Although State Farm represented that Officer Griffith walked through each room with Her, Her had no recollection of walking through the rooms with Officer Griffith.  See id.  Her was asked why a VCR and a DVD player that had been listed as stolen were both in the police pictures taken during the investigation on October 7.  See DUMF 81.  Her did not know that the police had taken pictures.  See id.  State Farm indicated that an Examination Under Oath

("EUO") would be necessary.  See id.  Her attempted to withdraw the claim for the VCR and the DVD, but then, after apparently speaking with his wife Xiong, stated that Xiong had earlier told him that the players were stolen, but just now told him that his daughter had thrown the players away because they were no longer working.  See id.

Later on January 16, 2012, State Farm sent Her a letter that requested additional receipts and documentation for the Rolex and the electronic equipment, the final police report, and a Sworn Proof of Loss.  See Defendant's Ex. 21.

On January 23, 2012, State Farm reported Plaintiffs' claim to the California Department of Insurance for suspected fraud.  See DUMF 83.  The same day, State Farm sent a letter to Plaintiffs requesting that they submit to an EUO, and that State Farm had retained counsel from the law firm of McDowell, Shaw, Colman & Garcia to take Plaintiffs' EUO.  See Defendant's Ex. 23.

On February 7, 2012, State Farm's coverage counsel sent a letter to Plaintiffs explaining when the EUO would be held, and requested that Plaintiffs submit a Proof of Loss, documentation regarding the Rolex, and receipts and documentation regarding the various electronics claimed. See Defendant's Ex. 24.

On February 23, 2012, Plaintiffs gave their EUO's.  Her testified that two televisions (from his daughters' rooms), three cameras, two laptop computers, and a desktop computer had been stolen.  See DUMF's 18, 19, 20.  When asked about the landlord's statement that the desktop computer was still in place, Her said that there was a broken desktop that was still in place underneath a workstation, but a working desktop that had been on top of the workstation was stolen.  See DUMF 19.  When asked about the VCR and DVD that appeared in the police photo, Her testified that he made a mistake listing the VCR and DVD player because his daughter had thrown them away without telling him.  See DUMF 91.  With respect to the Rolex, Her testified that he bought the Rolex on-line, used part of a $70,000 profit from the sale of his house to buy the Rolex, and purchased the Rolex using money orders from a liquor store.  See DUMF 93.  Her testified that he did not keep the instructions, the box, or warranty, and did not register the watch. See DUMF 94.  Her advised State Farm's counsel that he was not submitting a claim for the Rolex, but since it was listed on the police report, he did not want to withhold anything.  See Her

7

Dec. ¶ 13.  Her was aware that his wife's coins and jewelry far exceeded the policy limits.  See id.

When asked about why $7,000 was reported as stolen to the police on October 7, and $7,000 was

reported as stolen to State Farm Agent Lee on October 10, but that $19,500 was claimed as stolen

on October 11, Her testified that he was not sure what his wife had told the police or the agent and

that they had money scattered throughout the house.  See DUMF 97.  Her stated that their master

bedroom mattress was tipped over, but the police photos show that the mattress was in place.  See

DUMF 99.  Her testified that he did not notice that a total of 15 suits (5 men's and 10 women's)

were missing from the closet, and that the absence of those suits would not have made a gap.  See

DUMF 96.

Xiong's EUO was conducted through an interpreter.  See Defendant's Ex. 26 at 268.

During her EUO, Xiong stated that when she entered the master bedroom with the police officer,

the mattress was halfway on the floor.  See DUMF 100; Defendant's Ex. 26 at 268:13-269:19.

Xiong did not move the bed back in place.  See DUMF 108.  Xiong then went into the closet and

looked for a purse that contained silver and gold chains and $10,000.00, but the purse had been

taken.  See DUMF 101.  Xiong testified that she noticed a bag containing $7,000 was missing, and

she told Bobby[2] to interpret to the police officer that the $7,000 was missing.  See id.  Xiong also

saw, and reported to Officer Griffith, that $2,500 was slashed out of a suitcase.  See id.  Xiong

testified that her Hmong clothes were stolen, and that her husband's suits were missing.  See

DUMF 103.  Xiong stated that the closet was empty and that she told Officer Griffith about the

missing clothes.  See id.  Xiong testified that there was one computer in the living room before the

burglary, but that she did not know if there was another tower unit in the house during the

burglary.  See DUMF 104.  Xiong testified that the computer was on top of the computer desk,

and that nothing was stored underneath the computer desk.  See id.  Xiong testified that one

computer and three laptops were stolen, as well as a camcorder, a small camera, and a large

camera, and that no cameras were left behind by the burglars.  See Doc. Nos. 105, 106.  Xiong

testified that, in addition to the Hmong costume chains, nine other pieces of jewelry and Her's

watch were stolen.  See DUMF 107.  The watch was discovered missing on October 7, and that

---

[2] It is unknown who "Bobby" is, other than someone who was present with Xiong and Officer Griffith on October 7.

was the only piece of jewelry that was discovered missing after Officer Griffith left.  See id.

Xiong testified that she told the police about the nine pieces of missing jewelry.  See id.  When

asked why Her had claimed 24 pieces of jewelry had been stolen, even though Xiong had only

identified 9 pieces, Xiong stated that she bought some pieces, Her bought some pieces, and her

daughter bought some pieces for themselves.  See DUMF 109.  Xiong did not want the attorney to

ask any more questions and stated that she had a heart problem and that the attorney would be

responsible if she had a heart attack.  See id.

On February 15, 2012, Plaintiffs submitted a supplemental report to the Clovis Police

Department regarding the additional items that they claimed were stolen, including the 2

televisions, 2 laptop computers, 1 desktop computer, 2 DVD players, 1 VCR, 1 laser printer, 2

digital cameras, the Rolex, 2 children's mattresses, 1 mattress set, 2 sofas/loveseats, 1 corner sofa,

2 night stands, 1 dresser, 5 men's suits, 10 Hmong costume dresses, 10 women's suits, 1 metal

filing cabinet, $12,500 cash, 7 gold bracelets, 4 gold necklaces, 4 gold rings, 1,000 pieces of

silver, and 3 Hmong costume silver necklaces.  See DUMF 26.

Also on February 15, State Farm's counsel sent a letter to Plaintiffs asking for contact

information for two individuals, a receipt for the Walmart television, a Sworn Proof of Loss, and

an authorization to obtain bank records regarding the Rolex.  See Defendant's Ex. 28.

On March 2, 2012, State Farm's counsel sent a letter to Plaintiffs requesting the same

information as that requested on February 15.  See Defendant's Ex. 29.

On March 6, 2012, Plaintiffs provided State Farm with contact information for the two

individuals, a signed authorization, and a Visa statement and corresponding Walmart receipt for a

$39.86 DVD player and a $348.00 32" television set.  See DUMF 29.  Plaintiffs also submitted a

Sworn Proof of Loss.  See id.  The Sworn Proof of Loss was signed only by Xiong.  See

Defendant's Ex. 30.  The Sworn Proof of Loss indicates that Xiong believed that the loss occurred

on October 7, 2011 at 2:00 p.m., the loss was caused by "theft, house was broke into," she leased

the residence, she does not have other insurance that might apply, and the address of the residence

was provided.  See id.  Under a section for whether an insured is attaching an inventory for

claimed personal property, Xiong wrote "N/A" and did not fill in the box for the value of the claim

that she was making for damaged personal property.[3]  See id.

On March 14, 2012, State Farm's counsel (who had conducted the EUO's) recommended denying Plaintiffs' claim.  See DUMF 115.  State Farm's counsel summarized and divided the issues and discrepancies she saw with Plaintiffs' claim into twenty-six separate categories.  See id.

On March 15, 2012, State Farm sought advice from counsel about Plaintiffs' submitted Sworn Proof of Loss.  See DUMF 116.  Counsel recommended rejecting the Sworn Proof of Loss as incomplete.  See id.

On May 1, 2012, State Farm held a Claim Committee Meeting regarding Plaintiffs' claim. See DUMF 119.  The Committee decided to deny the claim based on inconsistencies and misrepresentations during the claim presentation process.  See id.

On May 22, 2012, State Farm sent Plaintiffs a letter that denied the claim.  DUMF 120.  In the letter, State Farm noted that the Policy required the Plaintiffs to cooperate.  See Defendant's Ex. 37.  However, Plaintiffs never submitted a completed Sworn Proof of Loss, or bank records regarding the Rolex, or a receipt for the television purchased at Walmart, and two individuals never contacted State Farm.  See id.  The letter indicated that the Sworn Proof of Loss did not include any amounts for which a claim was being made, and therefore the Sworn Proof of Loss was rejected.  See id.  The letter stated that discrepancies remained with respect to the Rolex, damaged furniture, electronics, and cash, and that unresolved inconsistencies existed between the Clovis Police Department, the landlord, and Plaintiffs' facts.  See id.  The letter stated that direct and circumstantial evidence existed that indicated Plaintiffs engaged in concealment or fraud and false swearing.  See id.  The letter then voided the Policy as of October 7, 2011.  See id.

Plaintiffs later filed this lawsuit.  During discovery, State Farm subpoenaed Costco records.  See DUMF 125.  The records do not show that Plaintiffs purchased a desktop computer for $1,500 or a laser printer for $350.  See id.  The records do reflect a Nikon digital camera was purchased for $1,479.99 and that two Sony cameras were purchased for $149.99 and $189.99.  See id.  However, no records reflect a camera purchased for $399.99.  See id.

---

[3] The relevant portion of the Sworn Proof of Loss reads:  "I [am/am not] attaching an inventory which shows in detail the quantity, description, actual cash value, and amount of loss of all personal and business property for which claim is being made.  I am making claim for $ _____ for damaged personal/business property."  Defendant's Ex. 30.

## SUMMARY JUDGMENT FRAMEWORK

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); United States v. Kapp, 564 F.3d 1103, 1114 (9th Cir. 2009). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Anderson, 477 U.S. at 248; Freecycle Sunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. Soremekun, 509 F.3d at 984. Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. See James River Ins. Co. v. Herbert Schenk, P.C., 523 F.3d 915, 923 (9th Cir. 2008); Soremekun, 509 F.3d at 984. If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105-06 (9th Cir. 2000). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire, 210 F.3d at 1103. The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets

forth specific facts showing that there is a genuine issue for trial.'" Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008).

The opposing party's evidence is to be believed, and all justifiable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Narayan v. EGL, Inc., 616 F.3d 895, 899 (9th Cir. 2010). While a "justifiable inference" need not be the most likely or the most persuasive inference, a "justifiable inference" must be rational or reasonable. See Narayan, 616 F.3d at 899. "If conflicting inferences may be drawn from the facts, the case must go to the jury." Holly D. v. Cal. Inst. of Tech., 339 F.3d 1158, 1175 (9th Cir. 2003). Inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Sanders v. City of Fresno, 551 F.Supp.2d 1149, 1163 (E.D. Cal. 2008); UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993, 997 (E.D. Cal. 2004). "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002). Further, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'" Anderson, 477 U.S. at 249-50; Hardage v. CBS Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006). If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. Nissan Fire, 210 F.3d at 1103.

### DEFENDANT'S MOTION

**1.** **Fraud & Concealment Clause**

*Defendant's Argument*

State Farm argues that Plaintiffs made numerous material misrepresentations. Although Plaintiffs claimed a $1,500 computer and a $350 laser printer that were both purchased at Costco, records from Costco reflect that no such purchases were ever made. Further, the Nikon D90 camera was valued at $1,800 but actually only cost $1,479.99; none of the Sony cameras cost

$399.99, and at most one cost $189.99; of the two DVD players valued at $169.99 and $229.78, one actually cost only $39.86; of the 25" television valued at $1,099.99 and the 19" television valued at $429.99, Plaintiffs submitted a Walmart receipt for a 32" television that was purchased for $348.  The evidence shows that Plaintiffs misrepresented the value of the claimed items.  There can be no dispute that an alleged purchase of an item that was claimed to be stolen, as well as the value of the item, constitute material misrepresentations.  Such information directly affects the value of a claim, and thus affects State Farm's liability under the Policy.  Because Plaintiffs made material misrepresentations, the Policy was properly voided and summary judgment is proper.

### *Plaintiffs' Opposition*

Plaintiffs argue that State Farm asked them to give values for the property taken in the burglary and they did so to the best of their ability.  Plaintiffs argue that they presented an honest and accurate estimate as to what they recalled the purchase price was or what the current value may be.  For many of the items, Plaintiffs no longer had documentation and the items were purchased many years ago.  For those items in which Plaintiffs had a receipt, exact prices were given.  For those items in which no receipt was available, Plaintiffs gave their best estimate.

### *Legal Standard*

"A fraud and concealment provision in an insurance contract will generally void the policy where an insured attempts to defraud the insurer."  Ram v. Infinity Select Ins., 807 F.Supp.2d 843, 853 (N.D. Cal. 2011); see Leasure v. MSI Ins. Co., 65 Cal.App.4th 244, 248 (1998); Cummings v. Fire Ins. Exchange, 202 Cal.App.3d 1407, 1414–19 (1988).  An attempt to defraud the insurer may occur as part of an application to obtain insurance or as part of an attempt to obtain benefits under an existing insurance policy.  Ram, 807 F.Supp.2d at 853; Leasure, 65 Cal.App.4th at 248.  In order for a policy to be voided under a fraud and concealment clause, the insured's misrepresentation must:  (1) relate to a material matter; (2) be knowingly and wilfully made with knowledge of falsity; and (3) be made with the intent to defraud or deceive.  See Ram, 807 F.Supp.2d at 853; Mitchell v. United National Ins. Co., 127 Cal.App.4th 457, 470 (2005); Cummings, 202 Cal.App.3d at 1416-18; Pedrotti v. American Nat'l Fire Ins. Co., 90 Cal.App. 668, 671 (1928).  A misrepresentation is material if it relates to the insurer's "investigation to

determine its obligations under the policy." <u>Leasure</u> , 65 Cal.App.4th at 248.  If an insured's

misrepresentation "concerns a subject reasonably relevant to the insurer's investigation, and if a

reasonable insurer would attach importance to the fact misrepresented, then it is material." <u>Ram</u>,

807 F.Supp.2d at 853; <u>Cummings</u>, 202 Cal.App.3d at 1417.  Materiality is generally a mixed

question of law and fact, but may be decided as a matter of law if reasonable minds could not

disagree on the materiality of the misrepresentation. <u>Ram</u>, 807 F.Supp.2d at 854; <u>Cummings</u>, 202

Cal.App.3d at 1417.  The issues of whether a statement was knowingly and willfully made with

knowledge of falsity, and whether the statements were made with the intent to defraud, are both

questions of fact.  <u>Ram</u>, 807 F.Supp.2d at 853; <u>Cummings</u>, 202 Cal.App.3d at 1417; <u>Pedrotti</u>, 90

Cal.App. at 671.  However, the intent to defraud is necessarily implied "when the

misrepresentation is material and the insured wilfully makes it with knowledge of its falsity."

<u>Ram</u>, 807 F.Supp.2d at 853; <u>Cummings</u>, 202 Cal.App.3d at 1418.

> *Discussion*

As discussed above, in order to void the Policy in this case, State Farm must show that

Plaintiffs knowingly made false and material representations in order to defraud State Farm.  <u>See</u>

<u>Ram</u>, 807 F.Supp.2d at 853.  State Farm has identified numerous representations by Plaintiffs as

fraudulent.  Many of the representations deal with either identifying items as stolen or damaged, or

setting a value or replacement cost for the stolen or damaged items.  Claiming a loss for things that

were not damaged by the covered event, or deliberately overstating the value or replacement cost

of insured property, constitute material misrepresentations.  <u>See</u> <u>Perovich v. Glens Falls Ins. Co.</u>,

401 F.2d 145, 147 (9th Cir. 1968); <u>Hyland v. Millers Nat. Ins. Co.</u>, 91 F.2d 735, 741-43 (9th Cir.

1937); <u>Nationwide Mut. Ins. Co. v. Ryan</u>, 2014 U.S. Dist. LEXIS 135829, *17 (N.D. Cal. Sept.

25, 2014); <u>Safeco Ins. Co. of Am. v. Bass</u>, 1994 U.S. Dist. LEXIS 7199, *8 (N.D. Cal. May 17,

1994); <u>Newman v. Firemen's Fund Ins. Co.</u>, 67 Cal.App.2d 386, 399 (1944).  Thus, the

representations identified by State Farm are generally "material."[4]  However, the Court cannot

hold as a matter of law that Plaintiffs knew that they were making false representations.

---

[4] It is not clear to the Court that each representation relied upon by State Farm is "material."  For purposes of this motion, it is enough to recognize that State Farm has identified some material representations by Plaintiffs, i.e. statements regarding whether an item was stolen and the value thereof.

Whether a statement is knowingly and willfully made with knowledge of falsity is a question of fact. <u>See</u> <u>Ram</u>, 807 F.Supp.2d at 853; <u>Cummings</u>, 202 Cal.App.3d at 1417; <u>Pedrotti</u>, 90 Cal.App. at 671. Cases in which summary judgment on this issue have been granted often involve an admission of some sort by an insured that he or she knew that a statement was false. <u>E.g.</u> <u>Herbert v. State Farm Mut. Auto. Ins. Co.</u>, 362 Fed. Appx. 748, 749-750 (9th Cir. 2010) (insured's counsel admitted that the insured knew that a material statement was false); <u>Ram</u>, 807 F.Supp.2d at 854-55 (insured admitted making false statements); <u>Cummings</u>, 202 Cal.App.3d at 1417 (insured admitted that she had lied). Here, Plaintiffs have made no admissions that they lied or that they knew they were making false statements.

Plaintiffs have declared that many of the items claimed as damaged or stolen were purchased many years ago, they did not have a complete recollection of when things were purchased or what the current value might be, but that they estimated the values to the best of their ability. <u>See</u> Her Dec. ¶¶ 9, 12; Xiong Dec. ¶ 9. That Plaintiffs may have over valued an item does not mean that they did so deliberately or with knowledge of falsity. <u>See</u> <u>Hyland</u>, 91 F.2d at 743 ("Mere overvaluation, of course, does not void a claim on the fraud and false swearing provision of the policy."). It is true that Plaintiffs submitted receipts and records that did not always correspond with either an item that was being claimed as stolen/damaged or the estimated value of such an item. However, it is not clear that Plaintiffs were actually making claims based on every receipt they submitted, <u>e.g.</u> DUMF 18, nor is it clear that the purchase price in a receipt is always a true reflection of *current* replacement costs. Moreover, it does not appear that the receipts were submitted simultaneously with the claim forms. Submitting a later found receipt that is contrary to an earlier provided estimation does not necessarily show knowledge of falsity; it may only show an inaccurate estimate.

State Farm has also identified contradictory statements between Her and Xiong during their EUO's regarding the number of pieces of jewelry that were stolen, the number of cameras that were stolen, and the number of computers that were stolen. Some of the contradictions do not have an express explanation, but could nevertheless be explained as either Her or Xiong simply making a mistake. For other contradictions, an explanation is given. In either case, Plaintiffs did

1   not admit to knowingly making a false statement.  The Court cannot hold that the explanations are

2   so outlandish that no reasonable trier of fact would give them credence.  A jury will evaluate

3   Plaintiffs' explanations and representations.  See Ram, 807 F.Supp.2d at 853; Cummings, 202

4   Cal.App.3d at 1417; Pedrotti, 90 Cal.App. at 671.

5        State Farm has identified inconsistences, contradictions, and overestimations.  However,

6   Plaintiffs do not admit to knowingly making false statements, and State Farm has not established

7   as a matter of law that Plaintiffs knowingly made false material representations.  Knowledge of

8   falsity remains a question of fact that a jury must resolve.  As result, State Farm has not

9   established that the policy is void due to the "fraud and concealment" clause.  Summary judgment

10  on this issue is will be denied.

11       **2.    Sworn Proof of Loss**

12       *Defendant's Argument*

13       State Farm argues that the omissions from Plaintiffs' Sworn Proof of Loss were material

14  and not trivial.  The Policy specifically required Plaintiffs to submit a Sworn Proof of Loss setting

15  forth the value of their claim and the items that they claimed were stolen.  Ownership and value of

16  stolen property were obviously important to State Farm's investigation.  State Farm required

17  clarification and confirmation from the Sworn Proof of Loss in light of Plaintiffs' contradictions

18  misrepresentations, and inconsistencies.  State Farm requested the Sworn Proof of Loss on several

19  occasions, yet when Plaintiffs finally submitted the document, they omitted the itemization and

20  value of their stolen property and Her never signed the document.  The failure of Plaintiffs to

21  follow the Policy's Sworn Proof of Loss requirement makes summary judgment proper.

22       *Plaintiffs' Opposition*

23       Plaintiffs argue that State Farm's position is infirm.  Plaintiffs argue that if they had not

24  underwent extensive hours of EUO's under penalty of perjury, then State Farm's position may be

25  somewhat plausible.  However, Plaintiffs underwent extensive EUO's under penalty of perjury,

26  submitted receipts for listed items, and underwent recorded statements.  Plaintiffs argue that their

27  conduct constitutes substantial compliance with the requirement of submitting a Sworn Proof of

28  Loss.  Therefore, summary judgment is not appropriate.

*Legal Standard*

Provisions of an insurance policy that require an insured to cooperate and meet various conditions are enforceable, and the violation of such provisions by an insured may be grounds for denying a claim.  See Abdelhamid v. Fire Ins. Exchange, 182 Cal.App.4th 990, 999-1001 (2010); Brizuela v. CalFarm Ins. Co.,, 116 Cal.App.4th 578, 587-91 (2004).  "In the context of cooperation that does not involve submission to an [EUO], California courts require a showing that the insurer was prejudiced in its investigation by the insured's failure to cooperate in order to void the policy." Ram v. Infinity Select Ins. Co., 807 F.Supp.2d 843, 857 (N.D. Cal. 2011); Martinez v. Infinity Ins. Co., 714 F.Supp.2d 1057, 1061-62 (C.D. Cal. 2010); Brizuela, 116 Cal.App.4th at 590-91.  An insurance policy may require that an insured submit a sworn proof of loss in a limited time frame, and such a provision is meant to give the insurer the necessary facts to facilitate an investigation of a claim and to protect it against fraudulent and excessive claims.  See Dellar v. Frankenmuth Mut. Ins. Co., 433 N.W.2d 380, 383 (Mich. Ct. App. 1988); Francis v. Iowa Nat'l Fire Ins. Co., 112 Cal.App. 565, 571 (1931); 13 Couch On Ins. § 186:8 at 186-23 (3d ed. 2005).  The submission of a proof of loss by the insured is subject to the substantial performance standard.  See 1231 Euclid Homeowners Assn. v. State Farm Fire & Casualty Co., 135 Cal.App.4th 1008, 1018 (2006); McCormick v. Sentinel Life Ins. Co., 153 Cal.App.3d 1030, 1046 (1984).  The issue is not whether the insurer has received every item of information that it has requested or has in its hands the exact type of information that it prefers when deciding a claim, rather *the question is whether there was enough evidence of whatever form and however acquired* that the insurer would act unreasonably if it refused to pay the claim.  McCormick, 153 Cal.App.3d at 1046 (emphasis added).  However, if the deficiencies in an insured's submissions are substantial and "a far cry from minor defects," then there is no substantial performance.  Abdelhamid, 182 Cal.App.4th at 1000-01.  Further, the total failure to comply with the notice and proof of loss conditions will excuse an insurer's potential liability due to failure of a condition precedent.  See Hickman v. London Assurance Corp., 184 Cal. 524, 529 (1920); 1231 Euclid, 135 Cal.App.4th at 1018.

*Discussion*

State Farm has established that Plaintiffs failed to complete and submit a signed sworn proof of loss form as required by the policy.  There is no doubt that submission of the sworn proof of loss form would fit under the duty to cooperate, especially when submission of such a form is mandated by the policy.  However, State Farm was also required to show that its investigation was prejudiced by Plaintiffs' failure to fully meet the proof of loss requirement.  See Ram, 807 F.Supp.2d at 857; Martinez, 714 F.Supp.2d at 1061-62; Brizuela, 116 Cal.App.4t h at 590-91.  State Farm presented no evidence of prejudice.  Establishing that a particular form was not fully completed, and identifying possible misrepresentations, are not sufficient.  No one from State Farm who was involved in the investigation addressed how the absence of a completed sworn proof of loss form caused prejudice.  Without evidence that the investigation was prejudiced due to the absence of a fully completed sworn proof of loss, summary judgment is inappropriate.

Additionally, Plaintiffs have raised the issue of substantial compliance.  There is no dispute that Plaintiffs submitted multiple forms that identified items that were stolen or damaged, provided some receipts, gave recorded statements, permitted investigators to examine their home, and underwent extensive EUO's.  That a sworn proof of loss form was not fully completed does not mean that State Farm did not otherwise have sufficient information from other sources to act on Plaintiffs' claim.  See McCormick, 153 Cal.App.3d at 1046.  This is especially so since the EUO's included questions about items and values listed by Plaintiffs in other forms/documents, and Plaintiffs clarified that they were not making claims/withdrawing claims for some items.  Aside from the absence of evidence regarding prejudice, summary judgment is also improper because there is a genuine dispute on the issue of Plaintiffs' substantial compliance.

**3.    Bad Faith**

*Defendant's Argument*

Because State Farm did not breach the contract as explained above, there is no liability for bad faith.  Alternatively, there was a genuine dispute between State Farm and Plaintiffs.  State Farm's investigation revealed numerous misrepresentations and contradictions.  Plaintiffs initially reported six categories of stolen items, including $7,000 in cash.  By the time Plaintiffs submitted

their claims, the list had grown to 26 categories, including $19,500 in cash.  State Farm conducted

an inspection, took recorded statements, attempted to obtain documentation, retained counsel, and

took Plaintiffs EUO's.  Plaintiffs made false statements regarding the existence and value of

certain items.  For example, numerous electronic items were listed, yet the police report indicates

that no electronics were stolen.  Further, the crime report does not list Hmong costumes or other

suits as stolen.  Further, the Plaintiffs' respective EUO's were inconsistent and contradictory

regarding the number of laptops stolen and the number of jewelry items that were stolen.  Her's

story about the Rolex was illogical and unsubstantiated.  Given the advice of counsel and the

inconsistencies revealed during investigation, there was clearly a genuine dispute which precludes

a finding of bad faith.

### *Plaintiffs' Opposition*

Plaintiffs argue that what State Farm put them through reflects that State Farm put its

interests before their insureds.  State Farm had placed a $4,300 reserve on the claim, despite the

value of the stolen jewelry, handgun, and cash.  Plaintiffs argue that they did basically everything

that was asked of them, including completing loss forms, submitting receipts and documentation,

subjecting themselves to a detailed recorded statement, and subjecting themselves to lengthy

EUO's.  State Farm ignored the evidence that supported Plaintiffs' claim, and focused on facts that

would justify a denial.  Further, at the EUO's, Xiong was laughed at by the examining retained

counsel, and an inordinate amount of time was spent on irrelevant items where no claim was

submitted or the amount available under the Policy was already exceeded.  State Farm engaged in

a pattern of bullying and bad faith.  Such oppressive conduct by claims adjusters that seek to

reduce the amounts that are legitimately payable breach the duty of good faith.

### *Legal Standard*

All insurance contracts include the implied covenant of good faith and fair dealing.  See

Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc., 78 Cal.App.4th 847, 879

(2000).  A "bad faith" claim against an insurer is based on a breach of the implied covenant of

good faith and fair dealing, which exists to assure the insurer makes prompt payment of claims to

the insured.  Buxbaum v. Aetna Life & Casualty Co., 103 Cal.App.4th 434, 442 (2002).  "When

1   benefits are due an insured, delayed payment based on inadequate or tardy investigations,

2   oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable, and

3   numerous other tactics may breach the implied covenant . . . ." Waller v. Truck Ins. Exchange,

4   Inc., 11 Cal. 4th 1, 36 (1995). The duty of good faith and fair dealings requires "an insurer to give

5   at least as much consideration to the interests of the insured as it gives to its own interests."

6   Wilson v. 21s t Century Ins. Co., 42 Cal.4th 713, 720 (2007); Maslo v. Ameriprise Auto & Home

7   Ins., 227 Cal.App.4th 626, 633 (2014). To establish a bad faith claim against an insurer, the

8   insured must show that: (1) benefits due under the policy were withheld; and (2) the reason for

9   withholding the benefits was unreasonable or without proper cause. See Bravo v. United States

10  Life Ins. Co., 701 F.Supp.2d 1145, 1159 (E.D. Cal. 2010); Wilson, 42 Cal.4th at 723; Progressive

11  West Ins. Co. v. Superior Ct., 135 Cal.App.4th 263, 278 (2005).

12          However, "an insurer denying or delaying the payment of policy benefits due to the

13  existence of a genuine dispute with its insured as to the existence of coverage liability or the

14  amount of the insured's coverage claim is not liable in bad faith even though it might be liable for

15  breach of contract." Wilson, 42 Cal.4th at 723; Jordan v. Allstate Ins. Co., 148 Cal.App.4th 1062,

16  1073 (2007); Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co., 90

17  Cal.App.4th 335, 349 (2001). "A genuine dispute exists only where the insurer's position is

18  maintained in good faith and on reasonable grounds." Wilson, 42 Cal.4th at 723; Maslo, 227

19  Cal.App.4th at 636. "The genuine dispute rule does not relieve an insurer from its obligation to

20  thoroughly and fairly investigate, process and evaluate the insured's claim." Wilson, 42 Cal.4th at

21  723; Maslo, 227 Cal.App.4th at 636. The "genuine dispute" doctrine will not apply when the

22  insurer engages in a biased investigation. See Pyramid Techs., Inc. v Hartford Cas. Ins. Co., 752

23  F.3d 807, 823 (9th Cir. 2014); Guebara v. Allstate Ins. Co., 237 F.3d 987, 996 (9th Cir. 2001);

24  Chateau Chamberay, 90 Cal.App.4th at 348-49. "The 'genuine dispute' doctrine may be applied

25  where the insurer denies a claim based on the opinions of experts." Chateau Chamberay, 90

26  Cal.App.4th at 347; Fraley v. Allstate Ins. Co., 81 Cal.App.4th 1282, 1292 (2000). "The

27  reasonableness of the insurer's decisions and actions must be evaluated as of the time that the

28  decisions were made," and not in the light of subsequent events. Jordan, 148 Cal.App.4th at 1073.

*Discussion*

State Farm has established that a genuine dispute existed with Plaintiffs regarding the issue of fraud. State Farm conducted a thorough investigation. As discussed above, State Farm sent investigators to examine Plaintiffs home, requested receipts and other documents, interviewed third parties, considered the police report, took statements and EUO's, and retained outside counsel. Outside counsel examined the documents and the evidence and recommended denying Plaintiffs' claim and voiding the policy pursuant to the fraud and concealment clause. Counsel's opinion had a basis in the facts of the claim. As extensively detailed above, Plaintiffs submitted multiple lists of allegedly stolen items. The lists differed significantly from the items identified in the police report. The pictures taken at the scene were not necessarily consistent with the damages claimed. Statements from the investigating police officer and from Plaintiffs' landlord were not necessarily consistent with the damages claimed by Plaintiffs. Plaintiffs gave inconsistent responses in the recorded statements and their EUO's. Plaintiffs submitted receipts for items that did not precisely match the items that were claimed as stolen or damaged, and Plaintiffs' statements regarding the availability of records and documentation was not necessarily correct. Plaintiffs submitted various estimated values or replacement costs that appeared excessive. Finally, Plaintiffs' financial situation did not appear to be strong, which suggests a motive to inflate the losses that were actually suffered. These considerations show that State Farm denied the claim and voided the Policy in good faith and on reasonable grounds. See Wilson, 42 Cal.4th at 723; Maslo, 227 Cal.App.4th at 636.

There is insufficient evidence that a biased investigation occurred. Cf. Pyramid Techs., 752 F.3d at 823; Chateau Chamberay, 90 Cal.App.4th at 348-49. No evidence has been submitted that suggests either State Farm misrepresented the nature of the investigation or lied to Plaintiffs. Similarly, there is no evidence that State Farm dishonestly selected outside counsel or its investigators, nor is there evidence that outside counsel or the investigator were unreasonable or biased. Plaintiffs argue that outside counsel was disrespectful during the EUO, including laughing at Xiong. Arrogant, hostile, or sarcastic conduct, combined with other evidence, may support a bad faith claim. See H. Walter Croskey, et al., Cal. Practice Guide: Insurance Litigation, ¶ 12:936

1   (The Rutter Group 2014); cf. Egan v. Mutual of Omaha Ins. Co., 24 Cal.3d 809, 821-22 (1979).

2   However, the circumstances in which the laughing occurred are not described, other than that it

3   occurred at some point during Xiong's EUO.  The single incident of counsel laughing (under

4   unclear circumstances) is alone insufficient to demonstrate bad faith.

5          Plaintiffs also contend that State Farm focused on items for which no claim was being

6   made, and ignored evidence that supported the claim.  Bad faith may be present when an insurer

7   ignores evidence that supports a claim and focuses on facts that would justify a denial.  See

8   Wilson, 42 Cal.4th at 721.  Here, State Farm spent time on the Rolex despite the value of other

9   stolen jewelry exceeding the $5,000 cap, and Her expressly withdrawing any claim for the Rolex

10  during his EUO.  However, conduct involving the Rolex was one piece of the entire investigation.

11  Plaintiffs have not established that State Farm focused or spent inordinate amounts of time on

12  immaterial matters.[5]   As discussed above, the entirety of the circumstances surrounding Plaintiffs'

13  claim suggested the possibility of fraud, and State Farm contacted the Department of Insurance

14  regarding possible fraud, pursuant to California Insurance Code § 1872.4.  State Farm was

15  justified in exploring the possibility of fraud, and Plaintiffs have not presented evidence that

16  indicates that State Farm's investigation was not justified or was otherwise unreasonable.

17         Finally, Plaintiffs cite to *Fraley v. Allstate Ins. Co.*, 81 Cal.App.4th 1282 (2000) to argue

18  that State Farm should have paid the portions of the claim that were established and essentially

19  undisputed.  In *Fraley*, the dispute between the insured and the insurer involved a homeowner's

20  policy, and the primary bad faith issue involved selection of contractors and accuracy of appraisal

21  values.  See Fraley, 81 Cal.App.4th at 1291-93.  No bad faith was found, and the appellate court

22  noted that Allstate had acted reasonably by *inter alia* paying undisputed cash values.  However,

23  *Fraley* did not involve possible fraud or a fraud and concealment clause that could have voided the

24  entire policy.  The basis for withholding payment in *Fraley* is not at all like the basis for

25  withholding payment in this case.  Plaintiffs have not shown that *Fraley* is probative.

26

27  [5] The Court notes that Plaintiffs' counsel represents that an inordinate amount of time was spent on items for which no
    claim was being made or had been withdrawn.  However, no evidence is cited.  An attorney's unsupported assertions

28  will not create a genuine disputed issue of material fact.  Barcamerica Int'l USA Trust v. Tyfield Importers, Inc., 289
    F.3d 589, 593 n.4 (9th Cir. 2002); Angel v. Seattle-First Nat'l Bank, 653 F.2d 1293, 1299 (9th Cir. 1982).

1    In sum, State Farm has established that a genuine dispute existed regarding the fraud and

2 concealment clause of the Policy.  Summary judgment in favor of State Farm on this claim is

3 appropriate.

4    **4.      Punitive Damages**

5    Punitive damages for breach of the covenant of good faith and fair dealing are available in

6 insurance cases because of the special relationship between the insurer and the insured.  Jonathan

7 Neil & Assocs., Inc. v. Jones, 33 Cal.4th 917, 937 (2004).  However, "without a bad faith claim,

8 there can be no punitive damages claim."  Helus v. Equitable Life Assur. Soc'y of the U.S., 309

9 F.Supp.2d 1170, 1185 (N.D. Cal. 2004); see also Ayala v. Infinity Ins. Co., 713 F.Supp.2d 984,

10 988 (C.D. Cal. 2010); Behnke v. State Farm Gen. Ins. Co., 196 Cal.App.4th 1443, 1470-71

11 (2011); Chateau, 90 Cal.App.4th at 351 n.10.  Because summary judgment on Plaintiffs' bad faith

12 claim is proper, summary judgment on their punitive damages claim is also proper.  See id.

13

14    **CONCLUSION**

15    State Farm moves for summary judgment on Plaintiffs' breach of contract, bad faith, and

16 punitive damages claims.  With respect to the breach of contract claim, State Farm has not

17 established as a matter of law that it was proper to void the policy pursuant to the fraud and

18 concealment clause.  State Farm has also failed to establish as a matter of law that it was

19 prejudiced by the failure of Plaintiffs to submit a sworn proof of loss form, or that Plaintiffs did

20 not substantially comply.  Therefore, summary judgment on this cause of action will be denied.

21    With respect to the bad faith cause of action, State Farm has established that it had a

22 reasonable and good faith basis for denying Plaintiffs' claim and voiding the Policy.  Plaintiffs

23 have not sufficiently explained, or provided sufficient evidence, that undermines State Farm's

24 investigation or conduct.  Therefore, summary judgment will be granted.

25    Finally, the basis for Plaintiffs' punitive damages request is the bad faith claim.  Because

26 summary judgment is being granted on the bad faith claim, summary judgment also will be

27 granted on Plaintiffs' request for punitive damages.

28

1

**<u>ORDER</u>**

2       Accordingly, IT IS HEREBY ORDERED that Defendants' motion for summary judgment

3   is DENIED on Plaintiffs' breach of contract cause of action, but is GRANTED on Plaintiffs' bad

4   faith and punitive damages claim.

5

6   IT IS SO ORDERED.

7   Dated:   March 13, 2015   _____

8                                        SENIOR  DISTRICT  JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28